SEXTON, Judge.
This action involves two consolidated cases arising from the lease of two separate tracts of farmland. The appellees are two separate “domestic partnerships,” Chil-dress, Smith & Holloman and Childress, Burns & Rowe, both being managed by Gerald H. Childress. The partnerships obtained separate writs of sequestration against the defendants on June 7, 1984, seizing stored wheat and unharvested standing wheat on the two tracts. The named defendants are Silas Mayeaux, Coco Bend Farms, Inc. (hereinafter referred to as Coco) and Jerry Garlington. Defendants-appellants, Coco and Jerry Garlington, filed reconventional demands on January 22, 1986, to dissolve the writs of sequestration and to recover damages. Appellants now appeal the trial court’s ruling sustaining the defendants-in-reconvention’s exceptions of prescription to the reconventional demands. We reverse and remand.
The appellees Childress, Burns & Rowe (plaintiffs in Suit No. 14,476) had leased a *654 certain 581.27 acre tract of farmland to the defendant Coco, while appellees Childress, Smith & Holloman (plaintiffs in Suit No. 14,475) had leased a certain 319.7 acre tract of farmland to the defendant Coco. Previously, by separate lease agreements, these partnerships had leased both tracts to Silas Mayeaux for the 1983 crop year. Both leases provided that Silas Mayeaux was to pay rents due on the 1983 crop year on December 15, 1983. Mayeaux farmed and harvested the crops on both tracts in October of 1983.
On November 3, 1983, the landowners leased the same two farms to a new lessee, Coco, for the 1984 crop year. Coco is a corporation formed and represented by Silas Mayeaux, secretary-treasurer, and Jerry Garlington, president. The two lease agreements in favor of Coco show that the leases began on January 1,1984, and ended December 81, 1984, with rent due December 15, 1984. Moreover, the two lease agreements provide that Silas Mayeaux and Jerry Garlington individually endorsed and guaranteed payment in full by Coco.
In November of 1983, Coco moved onto the premises and planted crops on both tracts. After the wheat matured in June of 1984, Coco began to harvest its mature wheat crop, having cut approximately 3,200 bushels which were stored at the Great River Grain Terminal in Columbia, Louisiana. At this point, the landowners believed that Silas Mayeaux was not going to pay them the rent due on the 1983 farm leases. The lessors’ pleadings allege that they filed suit against Silas Mayeaux in Ouachita Parish to recover the previous rent due.
On June 6, 1984, the lessors obtained these writs of sequestration seizing not only the stored wheat, but also the standing wheat which was unharvested on the premises leased to Coco. The petitions for writ of sequestration alleged that despite repeated demands for payment, Silas May-eaux had failed to pay any of the rent due under his leases and that he had failed to provide an accounting of the crop harvested and sold under this lease. Moreover, the petitions further alleged that Silas Mayeaux and Jerry Garlington had agreed that any and all wheat harvested under the lease would be stored at Great River Grain Terminal in Columbia, Louisiana, and that the grain so stored would include the name of plaintiffs on storage tickets. However, the plaintiffs contended that the defendant failed to list plaintiffs’ names on the wheat harvested and stored at Great River Grain Terminal and, in fact, they stated that Jerry Garlington indicated that the harvested wheat would be taken to another facility whose name and whereabouts would not be revealed to the plaintiffs.
Since rental payments under the leases had not been paid, plaintiffs asserted that a lessor’s privilege should attach. In the alternative, plaintiffs claimed that the terms of the lease provided for one-fifth of the sale of the crops for cash rental to plaintiffs.
In summary, the petitions alleged that the defendant, Silas Mayeaux, was indebted to the plaintiffs and that plaintiffs feared the lessee Coco would remove and dispose of all the wheat without making proper payments to them as called for under the terms of the lease. Thus, plaintiffs asserted that they were entitled to sequester both the unharvested and harvested wheat.
On January 22, 1986, the lessees-appellants filed a reconventional demand to dissolve the writs of sequestration and to recover damages. The appellees filed exceptions of prescription on February 18, 1986. Following a hearing held on June 5, 1986, the trial court upheld the exceptions of prescription based on the liberative prescription for torts of one year.
Appellants’ four assignments of error essentially present two separate contentions of error by the trial court in sustaining the exceptions of prescription. First of all, the appellants point out that the relationship between .the plaintiffs and the defendants is that of lessor and lessee. They argue that by virtue of this relationship, LSA-C.C. Art. 2692 obligates the plaintiffs to maintain lessees in peaceful possession. Therefore, they assert that the alleged improper sequestration is a violation of the lessor’s obligation thereunder and is there *655 fore governed by the ten year prescription of LSA-C.C. 3499 applicable to personal actions.
Finding merit in appellants’ alternative contention that tort prescription is applicable and has not yet commenced to run, we do not consider appellants’ aforesaid contractual argument.
The law is clear that a wrongful seizure, even by a court order, is a tort which prescribes in one year. LSA-C.C. Art. 2315. Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958). However, the law is well-settled that this one year prescription begins to run not from the date that seizure took place, but from the date the seizure is judicially declared to have been wrongful.
In Hernandez v. Harson, supra, the defendant had filed a peremptory exception of prescription (which was overruled by the trial court), apparently contending that prescription began to run from the date of the wrongful seizure. The Supreme Court rejected this argument, holding at page 323 that:
We concede that earlier cases relied on by defendant seemingly uphold his contention. Later decisions, however, have firmly established the rule that a party damaged by an illegal seizure of his property may file suit within one year after the final termination of the litigation, or in other words, that the running of one year prescription begins not from the date of the illegal seizure, but from the time the rights of the parties are finally determined. Obviously, the measure of damages grows out not only from the wrongful seizure but its continued illegal detention, the loss and deprivation to which the owner is illegally subjected. The soundness of this rule is instantly apparent in that the owner of property illegally seized is incapable of ascertaining or knowing the quantum of damages he has sustained until its rights to its ownership have been definitively decreed.
[Emphasis ours]
See also Poole v. American Bank & Trust Company, 416 So.2d 1365 (La.App. 3rd Cir.1982); Commercial Securities Company v. Mattingly, 26 So.2d 37 (La.App. 1st Cir.1946).
In the case at bar, the issuance of the writs of seizure on June 7, 1984, did not commence the running of prescription. There has not been an adjudication on the merits as to whether the seizures at issue were wrongful. Therefore, prescription has not begun to run in the instant case and the trial court erroneously sustained the appellees’ pleas thereof.
Accordingly, we reverse the trial court’s ruling on the pleas of prescription and remand these consolidated cases to the trial court for further proceedings not inconsistent herewith at appellees’ costs.
REVERSED and REMANDED.